## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| H.B. Fuller Company, a Minnesota corporation, | Court File No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF** |
| v. | |
| United States Fire Insurance Company, a Delaware corporation; | **JURY TRIAL DEMANDED** |
| Defendant. | |

The Plaintiff, H.B. Fuller Company ("H.B. Fuller"), for its complaint against the Defendant United States Fire Insurance Company ("US Fire") states and alleges as follows:

### INTRODUCTION

1. US Fire provided umbrella insurance coverage to H.B. Fuller for the periods November 30, 1978 – November 30, 1979 and November 30, 1979 – November 30, 1980 under policies which were each entitled The Defender Commercial Comprehensive Catastrophe Liability Policy (collectively referred to herein as the "Defender Policies" or the "Policies").

2. H.B. Fuller has been named as a defendant in a series of products liability cases in which plaintiffs allege exposure to H.B. Fuller's Foster product line over long time periods resulting in bodily injury during the Defender Policies (the "Products Cases").

3. The two primary policies that underlie the Defender Policies and that would otherwise insure the Products Cases are insolvent. The limits, however, have been fully paid.

4. The Defender Policies have now been triggered as to the Products Cases.

5. There is currently no dispute between the parties that a "time on the risk" allocation method should be used to allocate shares for any settlements or judgments in the Products Cases.

6. Assuming a "time on the risk" allocation method is applied to the Products Cases, generally the allocation of any settlements or judgments would begin with the policy in effect on the date of first exposure to an H.B. Fuller's Foster product and end with the policy that terminated on December 1, 1985.

7. The only present disputes between the parties as to coverage for the Products Cases concern the following issues: a) whether the Defender Policies are duty to defend policies which obligate US Fire to pay all defense costs; b) whether defense costs paid by US Fire erode the limits of the Defender Policies; and c) whether H.B. Fuller must pay a share of any settlements or judgments allocable to insolvent carriers who would otherwise pay under the "time on the risk" allocation method, that is, whether any "time on the risk" allocation excludes insolvent policy periods.

8. This action seeks a) a declaratory judgment as to specific rights of H.B. Fuller and obligations of US Fire as to the defense of the Products Cases and possible future settlements or judgments with respect to the issues in dispute; b) declaratory or other relief necessary to enable H.B. Fuller to obtain the benefits of US Fire's obligations as a duty to defend carrier including payment of 100% of defense costs and to require that US Fire's pro rata share of any settlements or judgments using a "time on the risk" allocation method exclude any policy years in which H.B. Fuller's carriers are insolvent; and c) injunctive relief and other ancillary relief as necessary to aid in the enforcement of the declaratory relief.

## THE PARTIES

9. H.B. Fuller is a Minnesota corporation with its principal place of business at 1200 Willow Lake Road, St. Paul, Minnesota 55164. H.B. Fuller is in the business of manufacturing and marketing adhesives and specialty chemical products.

10. US Fire is an insurance company incorporated under the laws of Delaware with its principal place of business in Morristown, New Jersey.

## JURISDICTION AND VENUE

11. This is a civil proceeding between citizens of different states and the amount in controversy is in excess of $75,000 exclusive of interest and costs. As a result, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

12. Further, pursuant to 28 U.S.C. § 2201, this Court has authority to issue the declaratory relief requested.

13. This Court has personal jurisdiction over US Fire because US Fire has sufficient contacts with the state of Minnesota and/or has otherwise availed itself of the markets of Minnesota including the issuance to H.B. Fuller of the two policies at issue in this matter as well as to issuance of insurance to other unrelated Minnesota insureds.

14. Further, US Fire is authorized to do business in Minnesota including being licensed as a property and casualty insurer. As a result, US Fire has consented to assertion of jurisdiction by the courts of this state.

15. Venue is proper in this District under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the dispute occurred in this District including the issuance of the Defender Policies to H.B. Fuller, H.B. Fuller's payment of premiums under the Policies for its share of the coverage, the assertion by H.B. Fuller of its rights to coverage under

the Policies and US Fire's refusal to accede to H.B. Fuller's assertion of its rights in certain respects.

## FACTUAL BACKGROUND

### The Insurance Covering the Products Cases

16. US Fire issued the Policies to H.B. Fuller, both titled The Defender Commercial Comprehensive Catastrophe Liability Policy, with the following policy numbers, policy periods and limits:

> (a) Policy Number 5230241649 for the policy period November 30, 1978 to November 30, 1979 with limits of $5 million in the aggregate for each annual period with respect to Products Hazards.
>
> (b) Policy Number 5230764756 for the policy period November 30, 1979 to November 30, 1980 with limits of $5 million in the aggregate for each annual period with respect to the Products Hazards.

Copies of these Policies are attached as Exhibits A and B.

17. The Defender Policies' clause titled "I. Coverage" provides in pertinent part as follows:

> The Company agrees to pay on behalf of the insured the ultimate net loss ... which the insured may sustain by reason of the liability imposed upon the insured by law, ... (a) Personal Injury Liability.
> ...

18. The "II. Defense Settlement" paragraph of the Policies provides in pertinent part as follows:

> With respect to any occurrence not covered, as warranted by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy ... the company shall:
>
> (a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such

> suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; ... .
>
> And the amounts so incurred, except settlements of claims and suits are payable by the company in addition to the applicable limit of liability of this policy.

19. The Defender Policies' "V. Retained Limit – Limit of Liability" section provides in pertinent part as follows:

> With respect to Coverage I (a) ... the company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of:
>
> (a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other ... insurance collectible by the insured; or
>
> (b) an amount as stated in Item 4(C) of the declarations as the result of any one occurrence not covered by the said policies or insurance;
>
> and then up to an amount not exceeding the amount as stated in Item 4(A) of the declarations as the result of any one occurrence. ...
>
> In the event of the reduction or exhaustion of the aggregate limits of liability of the underlying policies listed in Schedule A by reason of losses paid thereunder, this policy, subject to the above limitations, (1) in the event of reduction, shall pay the excess of the reduced underlying limits; or (2) in the event of exhaustion, shall continue in force as underlying insurance.

20. Conditions, paragraph E provides in pertinent part as follows:

> Except as provided in Insuring Agreement II (Defense, Settlement) or in Insuring Agreement V (Retained Limit – Limit of Liability) with respect to the exhaustion of the aggregate limits of underlying policies listed in Schedule A, or in Condition J (Underlying Insurance) the company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the insured ... .

21. Conditions paragraph J provides in pertinent part that:

If the underlying insurance is exhausted by any occurrence, the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence ... .

22. The Policies define "Ultimate Net Loss" as follows:

... the total of the following sums with respect to each occurrence:

(1) All sums which the insured, or any company as his insurer, or both, is legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury ... to which this policy applies, and

(2) All expenses, other than defense settlement, provided in Insuring Agreement II, incurred by the insured in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages, excluding only the salaries of the insured's regular employees, provided "ultimate net loss" shall not include any damages or expense because of liability excluded by this policy.

23. Two policies issued by Canadian Universal Insurance Company ("Canadian Universal") constituted underlying policies listed on the Defender Policies' Schedule A. Canadian Universal, however, is insolvent and was placed into a state liquidation proceeding on January 23, 1991.

24. Nonetheless, the limits of both Canadian Universal policies have been exhausted by payment.

25. US Fire now has a duty to defend the Products Cases.

26. H.B. Fuller obtained policies of primary and upper layer insurance from other carriers for years before and five years after The Defender Policies which should also cover the Products Cases.

27. For the four of the five years after the last Defender Policy's policy period, however, the carriers in the first and second coverage layers who would otherwise provide coverage for the Products Cases are insolvent.

## The Coverage Dispute

28. H.B. Fuller has tendered the Products Cases to US Fire and other solvent carriers obligated to provide coverage for these claims.

29. H.B. Fuller has sought acknowledgment from US Fire that a) under The Defender Policies US Fire is a duty to defend carrier as to the Products Cases; and b) as a duty to defend carrier, US Fire is required to fully defend H.B. Fuller in the Products Cases and US Fire is obligated to pay 100% of defense costs.

30. US Fire, however, contends that The Defender Policies do not contain a duty to defend, that US Fire does not have a duty to pay 100% of defense costs and that US Fire's obligation is limited to a payment of a small share of defense costs.

31. Under the Defender Policies, only "expenses ... <u>incurred by the insured</u>" fall within the definition of "Ultimate Net Loss" (emphasis added).

32. Only amounts that constitute "Ultimate Net Loss" erode the limits of the Defender Policies.

33. As a duty to defend carrier, US Fire has an obligation to engage counsel to defend H.B. Fuller.

34. As a result, it is US Fire, not H.B. Fuller, who must <u>incur</u> defense costs as to the Products Cases.

35. For this and other reasons, defense costs with respect to the Products Cases do not erode the limits of the Defender Policies.

36. H.B. Fuller will likely enter into settlements of the Products Cases from time to time in the future.

37. No agreement between H.B. Fuller and its carriers, however, exists with respect to future settlements of the Products Cases.

38. H.B. Fuller is not obligated to pay the share of any settlements or judgments which an insolvent carrier would otherwise pay because as to such policy years no insurance is available to H.B. Fuller.

39. US Fire, however, has refused to acknowledge that under a "time on the risk" allocation method no allocation of any settlement amounts should be made to H.B. Fuller as to any of the four policy years in the primary and second layers in which the carrier is insolvent.

## COUNT I
## DECLARATORY JUDGMENT

40. H.B. Fuller restates and incorporates paragraphs 1 through 39.

41. By reason of the foregoing, an actual controversy exists between H.B. Fuller and US Fire concerning certain terms of The Defender Policies.

42. Pursuant to 28 U.S.C. § 2201, H.B. Fuller is entitled to a declaration that under The Defender Policies:

    (a)    as a duty to defend carrier, US Fire has an obligation to fully defend H.B. Fuller including payment of 100% of defense costs;

    (b)    defense costs paid by US Fire as to the Products Cases do not erode the limits of The Defender Policies;

    (c)    application of a "time on the risk" allocation method to the Products Cases does not require that H.B. Fuller pay the share that would otherwise be payable by insolvent carriers, that is, policy years of insolvent carriers should be excluded from the allocation; and

    (d)    a declaration as to other terms and conditions of The Defender Policies as necessary to enable H.B. Fuller to require that US Fire fully defend H.B. Fuller including payment of 100% of defense costs and that US Fire pay a pro rata share of any settlements or judgments using a

"time on the risk" allocation method excluding any policy years in which H.B. Fuller's carriers are insolvent.

## COUNT II
## INJUNCTIVE RELIEF AND OTHER ANCILLARY RELIEF

43. H.B. Fuller restates and incorporates paragraphs 1 through 42.

44. H.B. Fuller is entitled to injunctive and other ancillary relief necessary to preserve this Court's jurisdiction over the parties and the issues herein and to aid in the enforcement of the declaratory relief.

**WHEREFORE,** H.B. Fuller requests judgment against US Fire as follows:

a. A declaration that:

   i. under the Defender Policies, US Fire has a duty to defend H.B. Fuller in the Product Cases;

   ii. as a duty to defend carrier, US Fire has an obligation to fully defend H.B. Fuller including payment of 100% of defense costs;

   iii. defense costs paid by US Fire as to the Products Cases do not erode the limits of The Defender Policies;

   iv. application of a "time on the risk" allocation method to the Products Cases does not require that H.B. Fuller pay the share of any settlement or judgment that would otherwise be payable by insolvent carriers, that is, policy years of insolvent carriers should be excluded from the allocation; and

   v. a declaration as to other terms and conditions of The Defender Policies as necessary to enable H.B. Fuller to require that US Fire fully defend H.B. Fuller including payment of 100% of defense costs and that US Fire pay a pro rata share of any settlements or judgments using a "time on the risk" allocation method excluding any policy years in which H.B. Fuller's carriers are insolvent.

    b.    Injunctive relief and any other ancillary relief as necessary to preserve this Court's jurisdiction over the parties and issues herein and to aid in the enforcement of the declaratory relief; and

    c.    Award of any and all other relief as is just and equitable.

### JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues so triable.

Dated: October 13, 2009                **BRIGGS AND MORGAN, P.A.**

                                          By: s/Lauren E. Lonergan
                                              Lauren E. Lonergan (#143443)
                                              Susan E. Gelinske (#27477X)
                                          2200 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN 55402
                                          (612) 977-8400

                                          **Attorneys for Plaintiff H.B. Fuller Company**